IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>Plaintiff,<br><br>v.<br><br>SALVATORE PRIFITERA,<br><br>Defendant. | **CASE NO.** _____<br><br>**COMPLAINT** |

Plaintiff Laboratory Corporation of America Holdings ("Plaintiff" or "Labcorp"), by its undersigned counsel, as and for its Complaint against Salvatore Prifitera ("Defendant" or "Prifitera"), alleges as follows.

## NATURE OF THE ACTION

1. Labcorp brings this action against Prifitera for a preliminary and permanent injunction and damages for breach of contract caused by defendant Prifitera's activities in competition with Labcorp, all in breach of his covenant not to compete and not to solicit Labcorp customers with whom he had contact while employed by Labcorp for one year following the termination of his employment at Labcorp.

2. Prifitera is bound by a Confidentiality/Non-Competition/Non-Solicitation Agreement with Labcorp (the "Agreement") that expressly prohibits him, for one year following the termination of his employment from, *inter alia*, (a) commencing employment with a competitor of Labcorp in which he performs duties and has responsibilities substantially similar or related to the duties he held at Labcorp or its subsidiaries in the geographic areas for which he was responsible for the six-month period prior to his termination; and (b) soliciting, either

directly or indirectly, customers or prospective customers of Labcorp, with whom he had contact at Labcorp over the twenty-four months preceding his separation, for the purpose of selling, licensing or providing the same or substantially same services offered and/or provided to customers or potential customers of Labcorp.

3. Prifitera voluntarily terminated his employment with Labcorp effective February 26, 2021 and sometime thereafter, in breach of his Agreement, began working for a direct competitor of Labcorp, Atvivo Laboratory ("Atvivo"), performing duties and responsibilities that are the same as, substantially similar, or substantially related to the duties he performed at Labcorp in the same territories for which he was responsible at Labcorp.

4. Moreover, as an employee of Atvivo, Prifitera has already solicited Labcorp's customers with whom he had contact while he was a Labcorp employee, in an effort to convert their business from Labcorp to Atvivo and, in at least one instance, was successful in doing so.

5. As a result of Prifitera's actions, which are on-going, Labcorp has suffered and will continue to suffer, damages and irreparable harm, including, but not limited to, the loss of business, loss of goodwill, and other damages for which there is no adequate remedy at law.

6. An injunction against any further prohibited activities is necessary to prevent such further harm to Labcorp caused by Prifitera's unfair and illegal activity which, if it continues unabated, will result in Labcorp losing more customers and goodwill.

7. Indeed, Prifitera agreed and acknowledged in the Agreement that LabCorp would be entitled to an injunction if he violated the Agreement:

> [Labcorp] will be placed at a competitive disadvantage in the event that you breach this [Agreement] and that damages would not be an adequate or reasonable remedy in the event of such breach.

>Accordingly, you stipulate that in the event that you breach one or more of the provisions set forth in this [Agreement], [Labcorp] will be entitled to an injunction restraining you from violating the terms of those paragraphs.

## THE PARTIES

8. Plaintiff Labcorp is a corporation organized under the laws of the State of Delaware with its principal place of business located at 358 South Main Street, Burlington, North Carolina.

9. Upon information and belief, Defendant Prifitera is a resident of the State of New Jersey with an address at 156 Orangeburgh Road, Old Tappan, New Jersey.

## JURISDICTION, VENUE AND GOVERNING LAW

10. Pursuant to Paragraph 9(i) of the Agreement, the Agreement is to be "construed in accordance with and governed by the laws of North Carolina, to the exclusion of the laws of any other forum."

11. Paragraph 9(j) further provides for jurisdiction in the State and Federal Courts of North Carolina, stating:

> [Prifitera] and [Labcorp] irrevocably consent to the jurisdiction of the Federal and State courts of North Carolina and you hereby consent and submit to personal jurisdiction in the State of North Carolina. You [] irrevocably waive any objection, including an objection or defense based on lack of personal jurisdiction, improper venue, or forum non-conveniens . . . .

12. This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, is in excess of $75,000.

13. Venue and jurisdiction is proper in this district under 28 U.S.C. § 1391(a), (b), and (c) because Prifitera, by his direct agreement, and/or by operation of law, has consented to such jurisdiction pursuant to Paragraph 9(j) of the Agreement.

## FACTS

**A.  Labcorp's Business**

14. Labcorp, among other things, provides a variety of medical laboratory diagnostic tests and services, which it markets and sells to medical professionals around the country.

15. Labcorp provides its testing services directly to hospitals and healthcare systems, partnering with these healthcare providers to offer tailored testing and diagnostic services that enable these providers to serve their patients' healthcare needs.

16. The market to service healthcare providers is highly competitive and Labcorp utilizes various sales strategies and other methods to assist it in maintaining and expanding its customer base for the services it offers, including expending significant resources to develop and maintain relationships and good will with its customers and to enable its employees to do the same.

17. Labcorp's sales strategies and plans are confidential and only shared with those Labcorp employees who require the information to perform their job functions.

**B.  Labcorp Hires Prifitera Who Agrees to Certain Restrictive Covenants**

18. On June 10, 2019, Prifitera accepted an employment offer to join Labcorp as its Vice President of Mergers and Acquisitions and Business Development for its Northeast Region, with a start date of September 3, 2019.

4

19. On September 3, 2019, Prifitera executed a confidentiality, non-solicitation, and non-compete agreement in connection with the commencement of his employment (the "September 2019 Agreement"). Thereafter, during the course of Prifitera's employment, and in connection with, and consideration for Labcorp's grant to him of restricted stock units Prifitera executed stock unit agreements setting forth the terms and conditions for such stock grants, each conditioned on and including his covenant to certain confidentiality, non-solicitation, and non-compete restrictions, contained in Exhibit B to the Stock Unit Agreement (the "Restrictive Covenant Agreement"), which restrictions are identical to those contained in the September 2019 Agreement.

20. The Stock Unit Agreements granted a certain number of shares, to vest in accordance with the specified vesting schedule and subject to the terms and conditions specified therein. Two of Prifitera's restricted stock unit tranches vested during his employment, the first on December 1, 2020 and the second on February 4, 2021.

21. Each Restrictive Covenant Agreement, by its express terms, supersedes the prior Restrictive Covenant Agreement, making the last such Restrictive Covenant Agreement dated April 16, 2020 operative for purposes of the current action ("the Agreement").

22. The Agreement restricts Prifitera, for a period of twelve months from the date of his separation from Labcorp, from performing the same, substantially similar, or substantially related job duties for a competitor of Labcorp in the same geographic areas for which he was responsible while employed at Labcorp. Specifically, Paragraph 5 of the Agreement provides, in relevant part:

> **Noncompetition**. During your employment and for a period of twelve (12) months following your voluntary or involuntary termination of employment, you shall not become an owner in,

shareholder with more than 2% equity interest in, investor in, or an employee, contractor, consultant, advisor, representative, officer, director, or agent of, a trade or business that offers products and services that are the same or substantially similar to the products and services provided by [Labcorp] in any geographic market in which [Labcorp] conducts business ("Competitor"), <u>provided</u>, <u>however</u>, that the duties and responsibilities of said employment or engagement as an owner in, shareholder with more than 2% equity interest in, investor in, employee, contractor, consultant, advisor, representative, officer, director or agent are (i) the same, similar, or substantially related to your current duties and responsibilities or duties or responsibilities performed by you while employed by [Labcorp] at any time during a six (6) month period prior to your date of termination and (ii) related to or concerning the Competitor's business activities in the Restricted Territory.

23. "Restricted Territory" is defined as "the geographic area that is part of your . . . duties and responsibilities . . . within a six (6) month period prior to the date of your termination of employment."

24. The Agreement further prohibits Prifitera from soliciting customers or prospective accounts with whom he had contact during his employment at Labcorp. Paragraph 4 of the Agreement provides, in relevant part:

> **Non-Solicitation of Customers.** During your employment and for a period of 12 months following the voluntary or involuntary termination of your employment, you will not either directly or indirectly through a subordinate, co-worker, peer or other person or entity, call upon, contact, or solicit or attempt to call upon, contact or solicit any customer or customer prospect of [Labcorp], with a view toward the sale or providing of any service or product competitive with the products and services offered by [Labcorp]; <u>provided</u>, <u>however</u>, the restrictions set forth in Paragraph 4 shall apply only to customers or prospects of [Labcorp], or representatives of the same, with which the Employee had contact during the last twenty-four (24) months of your employment with [Labcorp].

25. The Agreement also requires that Prifitera not disclose any confidential information related to Labcorp or its business practices, with such information specified to

6

Case 1:21-cv-00366-WO-JEP   Document 1   Filed 05/10/21   Page 6 of 14

include "information that concerns [Labcorp]'s prices, pricing methods, . . . profit margins, . . . methods [or] procedures . . . developed . . . for [Labcorp]'s . . . marketing strategies [or] sales techniques."

26. In addition to agreeing that Labcorp would be entitled to an injunction in the event he violated his obligations under the Agreement, Prifitera agreed that Labcorp would be entitled to cause an immediate forfeiture of any previously vested shares and, if Prifitera sold any vested shares, the gains Prifitera realized as a result of that sale.

**C.     Prifitera's Employment Responsibilities at Labcorp**

27. While employed by Labcorp, Prifitera held a senior position as Vice President of Mergers and Acquisitions and Business Development in which he reported directly to the Senior Vice President of Labcorp's Northeast Division.

28. In this position, Prifitera had a variety of duties and responsibilities, including, among others, obtaining new business through the negotiation of large testing and diagnostic services agreements between Labcorp and hospitals, large physician practices, and reference labs in the Northeast Region.

29. Having negotiated these agreements, Prifitera has intimate knowledge of their terms, precisely what the customers were concerned about during the negotiation, and the exact prices and terms he needed to offer in order to entice these customers to shift their business from Labcorp to Atvivo.

30. Further, his close work with these customers in pursuing common goals on behalf of those customers and Labcorp helped him to develop and/or maintain a strong working relationship of trust between himself and these customers.

7

31. Labcorp also provided Prifitera with administrative support and a business development budget in order to establish and maintain relationships with current and potential Labcorp customers.

32. In addition to the above described duties, Prifitera routinely participated in meetings concerning the formulation and implementation of sales strategies and plans, which included analysis of the activities of and competitive threats from other companies who offer the same or similar products and services as Labcorp.

33. As part of his Labcorp employment, Prifitera had access to and was given a variety of confidential information about Labcorp's business, including pricing information, customer account lists, and customer preferences and utilization.

34. The meetings and documents that Prifitera was privy to up until his termination included, among other things, critical components of Labcorp's sales plans and strategy.

35. All of the above described information is proprietary information of Labcorp that was invaluable to Labcorp employees like Prifitera in successfully performing their job functions and likewise would be invaluable to an employee going to work for a competitor to more effectively compete with Labcorp and would afford the competitor an inside look at Labcorp's strategic plans and thus provide it with an unfair business advantage ("Labcorp Proprietary Information").

**D.     Prifitera's Resignation and Subsequent Employment with Atvivo**

36. Prifitera resigned from his employment with Labcorp on February 24, 2021, effective February 26, 2021.

37. On March 12, 2021, Labcorp, through counsel, sent a letter to Prifitera reminding him of the restrictive covenants contained in the Agreement and that his employment by a Labcorp competitor and solicitation of Labcorp customers would breach the Agreement.

38. Sometime following his resignation from Labcorp, Prifitera began working for Atvivo Laboratory ("Atvivo").

39. Atvivo is a New York based and licensed laboratory that directly competes with Labcorp in the Northeast to provide tailored testing and diagnostic services to hospitals and healthcare providers.

40. Specifically, Atvivo competes with Labcorp to provide these customers with testing and diagnostic services related to Covid-19, clinical chemistry, endocrinology, diabetes, cellular hematology, hematology coagulation, oncology, urinalysis, immunology, and drug screening.

41. Upon information and belief, Prifitera is currently employed as the President of Atvivo Laboratory.

42. Upon information and belief, Prifitera is performing duties and responsibilities for Atvivo that are the same as, substantially similar, or substantially related to the duties he performed at Labcorp in the same territories for which he was responsible at Labcorp including selling Atvivo's competitive services to the same customers to whom Labcorp sells its services.

43. Since Prifitera began working for Atvivo, he has solicited Labcorp customers with whom he had contact while employed at Labcorp.

44. At least one of those customers, Bergen Medical, a Labcorp account in New Jersey, shifted its business from Labcorp to Atvivo.

9

45. While employed by Labcorp, and on its behalf, Prifitera secured this account and negotiated an agreement under which Labcorp provided to Bergen Medical Covid-19 testing services – the very same services that Atvivo now provides to Bergen Medical.

46. Upon information and belief, Prifitera solicited Bergen Medical to move its account from Labcorp to Atvivo and Bergen Medical did so because of this solicitation.

47. Prifitera's actions in violation of his Agreement came to Labcorp's attention on or around April 12, 2021.

48. On April 23, 2021, Labcorp, through counsel, sent a second letter informing Prifitera that his employment with a direct competitor, Atvivo, and his solicitation of Labcorp's customers, including his successful solicitation of Bergan Medical, constituted breaches of his Agreement.

49. On April 27, 2021, Prifitera, through counsel, responded to Labcorp's March 12 and April 23 letters.

50. Prifitera did not deny that he was employed by Atvivo, that Atvivo was a Labcorp competitor, or that he was soliciting Labcorp customers, including Bergen Medical. Instead, Prifitera has maintained that he is entitled to engage in activities in competition with Labcorp, despite the obligations contained in his Agreement.

## COUNT I

## BREACH OF CONTRACT

51. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. Prifitera executed the Agreement pursuant to which he agreed not to compete against Labcorp and not to solicit Labcorp's customers as set forth in detail in the Agreement and described above.

53. The promises made by Prifitera were materials terms to the Agreement, which was executed by Prifitera on no less than four occasions – first as a condition of his employment and three subsequent times in exchange for his receipt of certain equity grants to which he was not otherwise entitled.

54. Prifitera is in breach of the Agreement by, among other things, performing the same, substantially similar, or substantially related job duties for Atvivo in the same territory for which he was responsible while employed at Labcorp.

55. Prifitera is in further breach of the Agreement by targeting and soliciting his former Labcorp customers and prospective customers with whom he had contact while employed by Labcorp to purchase the same or substantially similar services offered and/or provided to customers or potential customers of Labcorp by him while he was employed there.

56. Prifitera is also in breach of the Agreement by using Labcorp's confidential information to unlawfully compete against Labcorp.

57. Prifitera's breach has resulted in damages to Labcorp, including but not limited to lost business, in an amount to be proven at trial, but which, upon information and belief, exceeds $75,000.

58. As a result of this breach, Labcorp has suffered and continues to suffer damages and irreparable harm, including, but not limited to, the loss of business, loss of goodwill, and other damages for which, as Plaintiff acknowledged in the Agreement, there is no adequate remedy at law.

11

59.     By breaching the Agreement, Prifitera also breached his stock unit agreements, described above, and Labcorp is entitled to recover all stock that has already vested in Prifitera and all profits he made from sale of such stock and Prifitera has forfeited all future vesting stock to which he might otherwise have been entitled.

**WHEREFORE**, Plaintiff Laboratory Corporation of America Holdings demands judgment in its favor and against Defendant Salvatore Prifitera as follows:

(a)     Granting a preliminary and permanent injunction enjoining and restraining Prifitera from violating the terms of the Agreement by, among other things:

(1)     Performing, on behalf of a competitor of Labcorp, including but not limited to Atvivo, duties and responsibilities that are the same, substantially similar, or substantially related to the duties or responsibilities he performed during the six-month period preceding the termination of his employment with Labcorp; and

(2)     Directly or indirectly contacting, soliciting, or communicating with a customer or potential customer of Labcorp with whom he had contact during the twenty-four-month period preceding the termination of his employment with Labcorp, for the purpose of offering, selling, or providing services or products that are competitive with the services and products offered and/or provided to that customer or potential customer by Labcorp;

(b)     Awarding compensatory damages to Plaintiff in an amount that exceeds $75,000;

(c)     Awarding Labcorp the return of all stock that vested in Prifitera under his three stock unit agreements and all profits Prifitera earned as a result of any sale of such stock, together with an order declaring that Prifitera has forfeited all future vesting stock he might otherwise have been entitled to;

(d)     Awarding applicable interest to Plaintiff on any judgment; and

(e) Awarding such other and further relief as this Court may deem just and appropriate.

## JURY DEMAND

Wherefore Plaintiff demands a trial by jury on the within causes of action.

This the 10th day of May, 2021.

**K&L GATES LLP**

By: /s/ *David C. Lindsay*
David C. Lindsay
North Carolina State Bar No. 24380
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Post Office Box 17047 (27619-7047)
Raleigh, North Carolina 27609
Telephone: (919) 743-7322
Facsimile: (919) 516-2122
E-mail: david.lindsay@klgates.com
*Counsel for Plaintiff*

**KELLEY DRYE & WARREN LLP**

By: /s/ *Robert I. Steiner*
Robert I. Steiner
New York State Bar No. 2838621
Kelley Drye & Warren LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7965
Facsimile: (212) 808-7897
E-mail: rsteiner@kelleydrye.com
*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically in accordance with local rules and was therefore served electronically on those entities that have properly registered for such electronic service and by United States Mail, first class for those entities not registered for electronic service.

    Salvatore Prifitera
    156 Orangeburgh Road
    Old Tappan, New Jersey

Submitted this 10th day of May, 2021.

                                    **K&L GATES LLP**

        By:    /s/ *David C. Lindsay*
                  David C. Lindsay
                  North Carolina State Bar No. 24380
                  K&L Gates LLP
                  4350 Lassiter at North Hills Ave., Suite 300
                  Post Office Box 17047 (27619-7047)
                  Raleigh, North Carolina 27609
                  Telephone: (919) 743-7322
                  Facsimile: (919) 516-2122
                  E-mail: david.lindsay@klgates.com
                        *Counsel for Plaintiff*